UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

SUBARU OF INDIANA AUTOMOTIVE, INC,    )
           )
        Plaintiff,    )
           )
        v.    )    No. 4:24-cv-00011-TWP-KMB
           )
VALEO SYLVANIA LLC,    )
           )
        Defendant.    )

### ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE A COUNTERCLAIM

Presently pending before the Court is Defendant Valeo Sylvania LLC's ("Valeo") Motion for Leave to File a Counterclaim. [Dkt. 74.] Plaintiff Subaru of Indiana Automotive, Inc. ("SIA"), has filed a Response in Opposition, [dkt. 76], and Valeo has filed a Sealed Reply,[1] [dkt. 79]. For the reasons explained below, Valeo's Motion for Leave to File a Counterclaim is **DENIED**. [Dkt. 74.]

## I.      BACKGROUND

### A.    The Impreza Headlamp Recall and Initiation of This Action

The claims in this case stem from a recall of defective vehicle headlamps.[2] Plaintiff SIA manufactures motor vehicles, and Defendant Valeo manufactures vehicle lighting, including headlamps. [Dkt. 1 at 2.] SIA and Valeo entered into a contract (the "Supply Agreement") whereby

---

[1] Presently pending before the Court are also multiple Motions to Seal, which relate to Valeo's Reply and other sealed exhibits relied on by the Parties. The Court will decide those motions by separate Order at a later date.

[2] Much of this factual background is drawn from the allegations in the Complaint. [Dkt. 1.] The background facts are set forth for purposes of understanding the motions pending before the Court, not because they have been established as true.

Valeo supplied Subaru with headlamps for its Impresza vehicles. [*Id.*] In July 2022, the U.S. Department of Transportation's National Highway Traffic Safety Administration required SIA to initiate a recall because the front headlamps manufactured by Valeo and installed on SIA's Impreza vehicle did not meet federal safety standards. [*Id.* at 4.]

SIA filed the instant case on January 22, 2024. [*Id.* 1.] In its Complaint, SIA asserted state-law claims of breach of contract and breach of warranty against Valeo. [*Id.* at 5.] Specifically, SIA alleges that Valeo breached the Supply Agreement by failing to supply necessary headlamps and refusing to indemnify SIA for the costs of the recall. [*Id.* at 5-6.]

The Court entered a Case Management Plan on April 18, 2024. [Dkt. 22.] Among other deadlines, the Court set the deadline for motions for leave to amend pleadings or to join additional parties as June 24, 2024. [*Id.* at 3.] On January 20, 2026, Valeo filed a Motion for Leave to File a Counterclaim. [Dkt. 74.]

### B.    Evidence of Subaru's Alleged Headlamp Markups

Valeo's justification for filing its Motion for Leave to File a Counterclaim more than a year-and-a-half after the deadline for leave to amend is that it alleges it recently found out during discovery that "SIA is inflating its damages with incremental profits from its corporate affiliates." [Dkt. 75 at 5 (capitalization altered).] Valeo says this was first discovered during the deposition of SIA employee, Ken Nelson, on October 28, 2025. [Dkt. 79-1.] Mr. Nelson explained that the headlamps SIA purchases from Valeo are marked up each time the headlamps are sold to other Subaru entities before ultimately being sold to the dealer who installs the new headlamp in the Impreza. [*Id.* at 3.] Specifically, he explained that Valeo sells a headlamp to SIA, then SIA sells the headlamp to Subaru of America, Inc. ("SOA"), at a higher price, then SOA sells it to the dealer for an even higher price (the "alleged headlamp markups"). [*Id.*; dkt. 79 at 6.]

2

Following Mr. Nelson's deposition, Valeo says it "promptly requested invoices and other records from SIA showing how SIA and its corporate affiliates invoiced costs for the Impreza headlamp recall." [Dkt. 75 at 6.] Valeo says that the documents it received corroborate Mr. Nelson's deposition testimony in that they "show that SIA and its corporate affiliates intend— impermissibly and without any contractual basis—to collect from Valeo not just costs but profits attributable to some internal arrangement with respect to the sale of replacement headlamps," and that "[Subaru Corporation f/k/a Fuji Heavy Industries, Ltd. ("SBR")] and SOA may claim an interest in SIA's damages." [*Id.*]

Valeo received the documents that corroborated Mr. Nelson's deposition testimony on December 23, 2025. [Dkt. 79 at 6.] Valeo filed the pending motion asking the Court for leave to assert a counterclaim approximately four weeks later. [Dkt. 74.]

## II.    APPLICABLE LEGAL STANDARD

Generally, a motion for leave to amend a pleading is evaluated under Federal Rule of Civil Procedure 15(a)(2). In cases where that subsection of the rule applies, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason— futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019) (citation and quotation marks omitted).

However, when a party seeks leave to amend a pleading after the deadline to do so established by the applicable case management plan has passed, a "heightened good-cause standard" from Rule 16(b)(4) applies before the court considers whether the requirements of Rule 15(a)(2) are satisfied. *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (citation

3

omitted).  In other words, "post-deadline amendments create a two-step process." *Sumrall v. LeSea, Inc.*, 104 F.4th 622, 630 (7th Cir. 2024) (citation and quotation marks omitted).  "First a party seeking amendment must show good cause for modifying the scheduling order." *Id.* (citation and quotation marks omitted).  Only then may [the Court] reach the Rule 15 question." *Id.*  The heightened good cause standard articulated in Rule 16 primarily considers the diligence of the party seeking the amendment to determine whether good cause has been established.  *Id.*  The movant bears the burden to establish its diligence under Rule 16.  *Id.*

### III.    DISCUSSION

Valeo's Motion for Leave to File a Counterclaim seeks to add two additional parties to this action—SBR and SOA—both of which are other Subaru entities.  [Dkt. 74-1 at 13.]  Valeo's Motion also seeks to add two new counterclaims: (1) a breach of contract counterclaim against SIA; and (2) a declaratory judgment counterclaim against SIA, SBR, and SOA.  [*Id.* at 21-22.] The Court's analysis must begin with whether there is good cause to amend the scheduling order under Rule 16 to add each proposed new counterclaim.  *Sumrall*, 104 F.4th at 630.  Because the Court concludes that Valeo has not met its burden to show that there is good cause to amend the scheduling order, the Court does not reach the Parties' other arguments about whether amendment is otherwise proper, including those regarding joinder, prejudice, and futility.

### A.    Proposed Breach of Contract Counterclaim

Valeo's proposed breach of contract counterclaim is based on an alleged breach of Section 17 of the Supply Agreement.  [*Id.* at 21.]  Section 17 "outlines certain obligations of SIA and rights of Valeo as it relates to SIA's request for reimbursement from Valeo."  [*Id.*]  Among other things, Section 17 requires SIA to provide "certain cost information to Valeo, which Valeo then has a right

to review, challenge, and audit." [*Id.* at 21.] Valeo alleges that SIA "breached the Supply Agreement by failing to provide this information to Valeo." [*Id.*]

The Court must first determine whether Valeo has met the "heightened good-cause standard" from Rule 16. *Sumrall*, 104 F.4th at 630. As noted above, the "primary consideration for district courts [making this determination] is the diligence of the party seeking amendment." *Id.* (citation and quotation marks omitted).

Valeo argues that it has acted with the necessary diligence "because the information necessitating this amendment"—the alleged headlamp markups—was not known until Mr. Nelson's deposition on October 28, 2025, and not confirmed until Valeo received sales invoices on December 23, 2025. [Dkt. 75 at 8.] Valeo argues that "[t]his was the ***first time*** [it] learned about this profit-siphoning arrangement among SIA corporate affiliates and, as a result, discovered that SIA is inflating its claimed damages." [Dkt. 75 at 8-9 (emphasis in original).] Once Valeo confirmed the deposition testimony via sales invoices, it filed the instant Motion for Leave to File a Counterclaim four weeks later, which it maintains shows the necessary diligence under Rule 16. [*Id.* at 9.]

SIA maintains that Valeo cannot meet the heightened good cause standard under Rule 16. [Dkt. 76 at 5-10.] As to the breach of contract counterclaim, SIA argues that Valeo has not explained why it could not have raised this counterclaim at the outset of the case, since the counterclaim is not based on any new information, let alone the alleged headlamp markups on which Valeo entirely relies. [*Id.* at 6.] Specifically, SIA points out that the recall began in late 2022, and "the parties entered into a tolling agreement in June 2023," yet "Valeo never demanded (and Valeo has provided no evidence that it demanded) information from SIA under Section 17 before the suit was filed or since." [*Id.*] SIA also emphasizes that Valeo, in its response to SIA's

interrogatory asking Valeo to identify each provision of the Supply Agreement SIA allegedly breached, did not identify Section 17 of the Supply Agreement and has not updated its interrogatory response.  [Dkt. 76 at 7; dkt. 76-1 at 5.]

Valeo's reply fails to directly address SIA's arguments regarding whether there is good cause under Rule 16 to add the breach of contract counterclaim.  [Dkt. 79.]  Instead, Valeo's reply focuses on SIA's other arguments regarding the breach of contract counterclaim.  [*Id.* at 12-14.]

The Court agrees with SIA that under the circumstances presented here, Valeo has not shown the necessary diligence to meet its burden under Rule 16 for the Court to grant it leave to assert the proposed breach of contract counterclaim.  As a general matter, Valeo is correct that new information revealed in discovery followed shortly thereafter by a motion for leave to add a new claim or party can amount to sufficient diligence and establish good cause to amend the scheduling order.  *See, e.g.*, *Parra v. Crear*, 2025 WL 2390616, *3 (S.D. Ind. Aug. 15, 2025).  However, the newly discovered information must be the reason that the claim can be brought now rather than earlier in the litigation.  *See Cage v. Harper*, 42 F.4th 734, 743 (7th Cir. 2022) (affirming the district court's denial of leave to add a claim based on a lack of good cause under Rule 16 since the party seeking to add the claim "had all the information he needed to include that claim much earlier in the litigation").

That distinction is where Valeo's attempt to establish diligence for its proposed breach of contract counterclaim falls short.  Valeo has not explained how the new evidence regarding the alleged headlamp markups allows it to bring a breach of contract counterclaim only now, when it could not have earlier in this case.  The alleged breach of Section 17 of the Supply Agreement is SIA's failure to provide "certain cost information to Valeo."  [Dkt. 74-1 at 21.]  It is entirely unclear—and, critically, Valeo does not explain—how the newly discovered evidence regarding

the headlamp markup allows it to bring a counterclaim based on SIA's failure to provide "certain cost information" now when it previous could not have.  In fact, it appears that SIA has not provided any such information under Section 17 during the entirety of this litigation.  SIA asserts, and Valeo does not dispute, that Valeo has never requested information under Section 17.  Thus, presumably, SIA has not provided any.  Valeo certainly does not suggest that it has.  Assuming SIA's failure to provide the requisite information constitutes a breach of the Section 17 of the Supply Agreement, it appears Valeo's proposed breach of contract counterclaim was just as available at the outset of this litigation as it is now.  Because Valeo has not explained how its proposed breach of contract counterclaim was only available once it knew of the alleged headlamp markups rather than since the outset of this litigation, the Court concludes that Valeo has failed to carry its burden to demonstrate the necessary diligence to establish good cause under Rule 16.  *See Cage*, 42 F.4th at 743.

### B.      Proposed Declaratory Judgment Counterclaim

The Court turns next to whether Valeo has established good cause under Rule 16 to add its proposed declaratory judgment counterclaim to this action.  In its proposed counterclaim, which is asserted against SIA, SBR, and SOA, Valeo alleges generally that "[a] declaratory judgment by this Court will clarify the rights and legal relationship of Valeo, SIA, SBR, and SOA with respect to the Supply Agreement and the recall."  [Dkt. 74-1 at 22.]  It seeks the following ten declarations regarding the Supply Agreement, the recall, and/or the legal obligations between Valeo and the three Subaru entities, SIA, SBR, and SOA:

- SIA must provide Valeo the Subaru Flat Rate Manual; Warranty Claim Statements; and Supporting Invoice;

- Under Section 17.5 of the Agreement, only one recovery may be had by SIA or SOA or a third party designated by SIA;

- Providing the Warranty Claim Statement and Supporting Invoice and giving Valeo an opportunity to exercise its right to audit those claims are conditions precedent to recovery under Sections 5.2 and 17.5;

- Valeo is not obligated to reimburse SIA, SOA, or a designated third party until it receives a Warranty Claim Statement and Supporting Invoice substantiated by an audit;

- SOA has suffered no damage due to the recall;

- SBR has suffered no damage due to the recall;

- The Agreement permits recovery by SIA, SOA, or a designated third party of labor charges resulting from the recall only at the rates specified in the Subaru Flat Rate Manual, not markups or profits collected by it or others;

- If SOA "adjusted" the Warranty Time Allowances in the Subaru Flat Rate Manual without prior written notice to both SIA and Valeo, those adjustments are null and void with respect to the Agreement;

- The Agreement permits recovery by SIA, SOA, or a designated third party of parts charges resulting from the recall only at the cost incurred by SIA to secure replacement headlamps from Valeo and not markups or profits collected by it or other Subaru entities; and

- To the extent the Agreement creates rights in favor of SIA, SOA, and SBR, enforcement of a right by one is deemed the enforcement of the right by all.

[*Id.* at 22-23.]

Valeo's initial argument that it has acted with the necessary diligence regarding its proposed declaratory judgment counterclaims is the same as that for its proposed breach of contract counterclaim outlined above. It asserts that Mr. Nelson's deposition testimony, which was corroborated by documents Valeo received in December 2025, was when Valeo first learned of the alleged "profit-siphoning arrangement among SIA corporate affiliates and, as a result, discovered that SIA is inflating its claimed damages." [Dkt. 75 at 8-9.] As noted above, after Valeo received corroborating documents on December 23, 2026, it filed the instant Motion for Leave to File a

8

Counterclaim four weeks later. [*Id.* at 9.] This, says Valeo, shows that it was diligent and thus establishes good cause under Rule 16. [*Id.* at 8-9.]

SIA argues that "Valeo's claimed lack of knowledge about the specifics of the replacement part supply chain does not justify leave to amend to add a claim for declaratory relief." [Dkt. 76 at 7.] SIA begins its argument by noting that, "Valeo does not even attempt to justify each of the ten declaratory judgment claims." [*Id.*] "Rather," SIA continues, "Valeo broadly states that it should be allowed to assert a counterclaim at this late date against SIA" because it recently learned about the alleged profit-siphoning arrangement among SIA and its corporate affiliates. [*Id.*] But SIA maintains that Valeo knew all the relevant information necessary to bring its proposed declaratory judgment counterclaims when this case was filed—specifically, SIA notes that Valeo knew "every contractual provision [it] wants interpreted, and each party [it] wants to add" since it filed its Answer. [*Id.* at 9.] Further, SIA points out that Valeo knew from the outset of this litigation that SOA and SBR had decision-making roles in any recall even though neither is a party to the Supply Agreement; thus, "[i]f Valeo believed that SBR or SOA were asserting rights under the Supply Agreement against Valeo, which they were not and which they have not, Valeo had every opportunity to name SBR and SOA when this litigation began rather than eighteen months after the deadline." [*Id.* at 10.]

In reply, Valeo reiterates that its declaratory judgment counterclaim "is timely because it is based on newly discovery information that was not substantiated by document discovery until December 23—***less than a month before filing this Motion***." [Dkt. 79 at 5 (emphasis in original).] The new information, says Valeo, is not that SOA or SBR were involved in the recall; instead, it is "the profit siphoning scheme that apparently exists between the Subaru entities and that SBR has actually incurred the costs related to the recall." [*Id.*] The latter information "is what prompted

9

Valeo's Motion for Leave to Amend." [*Id.*]  Valeo then details its efforts during this litigation to obtain "information from SIA to understand the Impreza recall cost structure and SOA and SBR's role in calculating the costs that SIA alleges are its damages," but did not receive any information regarding "SOA and SBR's part in the damages calculation." [*Id.* at 6.]  In short, Valeo says "[t]here was no way for Valeo to know that SIA was pursuing damages on behalf of SOA and SBR until Ken Nelson's deposition on October 28, 2025."[3]  [*Id.*]

It is well-establish that it is the moving party's burden to show good cause under Rule 16. *See Sumrall*, 104 F.4th at 630; *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005).  Assessing whether a party has been diligent and thus shown good cause is a fact-specific inquiry, where the Court's analysis typically hinges of the particularities of the case, including the contours of the proposed amendment.  *See, e.g.*, *Adebiyi v. South Suburban College*, 98 F.4th 886, 895-96 (7th Cir. 2024).  After reviewing the Parties' arguments and the specific declarations Valeo seeks by way of its proposed declaratory judgment counterclaim, the Court concludes that Valeo has not carried its burden to show good cause.

The difficulty for Valeo is that, based on what it has presented, it is unclear whether the declarations it seeks could have been brought earlier in the litigation.  Some of the declarations

---

[3] Valeo repeatedly points out that it has sought more detailed information regarding damages from SIA via discovery in this case but suggests that it has been stymied in its efforts.  Valeo states that, up until the deposition of Mr. Nelson, SIA "continually relied on a summary spreadsheet listing recall costs as line items without any documentation to prove these costs," [dkt. 75 at 5-6], and it suggests that SIA's responses to interrogatories regarding damages were deficient, [dkt. 79 at 6]. Valeo correctly notes that it "has kept the Court informed regarding potential discovery disputes including those related to cost documentation from nonparties."  [Dkt. 75 at 9 n.4.]  But as the Court stated in its most recent order extending certain case management deadlines, "[d]espite the record reflecting that counsel has informed the Court multiple times that a request for a discovery conference may be on the horizon, [*see* dkts. 67; 73; 82], no such request has ever been made by either Party."  [Dkt. 95 at 2.]  That remains true as of the date of this Order.  Given this, Valeo's various statements regarding its inability to access more specific information about damages via discovery carry little weight in this context.

Valeo seeks appear, at least on their face, to potentially be related to the newly discovery evidence. [Dkt. 74-1 at 22-23.]  Other declarations—such as the ones regarding Section 17 of the Supply Agreement—appear to have been available at the outset of the litigation, like Valeo's proposed breach of contract counterclaim.  [*Id.*]

As noted above, SIA takes the position that Valeo had all the information it needed to pursue these declarations at the outset of the litigation.  [Dkt. 76 at 7-9.]  And SIA specifically argued in its response brief that "Valeo does not even attempt to justify each of the ten declaratory judgment claims."  [*Id.* at 7.]  Despite this argument, Valeo again failed to do so in its reply brief. Instead, it chose to rely on the newly discovery evidence of Subaru's alleged headlamp markups as justification to bring any and all additional counterclaims, without explaining how each of the specific proposed declarations it seeks became available only once Valeo had the newly discovered evidence.  [Dkt. 79 at 5-7.]

It is not the Court's obligation to sort through each of the ten declarations Valeo seeks and construct arguments for why there may or may not be good cause to add such a counterclaim based on the new evidence on which Valeo relies.  *See Bregin v. Liquidebt Sys., Inc.*, 548 F.3d 533, 538 (7th Cir. 2008) ("[W]e decline to construct a party's argument."); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392 397 (7th Cir. 2000) ("[I]t is not this court's responsibility to research and construct the parties' arguments.") (citation and quotation marks omitted).  As the moving party with the burden to establish good cause, that obligation was Valeo's, but it failed to do so.  When, as here, "a party presents an insufficiently robust explanation of why [it] was diligent, there is no good cause."  *Sumrall*, 104 F.4th at 630 (alteration in original) (citation and quotation marks omitted).  Accordingly, the Court concludes that Valeo has failed to carry its burden of establishing

11

good cause under Rule 16 to add its proposed declaratory judgment counterclaim, and thus SBR and SOA as parties to this litigation.

## IV.    CONCLUSION

This case has been pending for more than two years.  The deadline for Valeo to add parties and counterclaims was more than 18 months before it filed its Motion for Leave to Add a Counterclaim.  Given this, the Court would expect such a motion to present a compelling—and specific—explanation for why the proposed additional counterclaims could only have been raised at this late juncture.  Valeo's motion does not.  It needed to do so to carry its burden of showing that it acted diligently and has good cause to amend the scheduling order.  Because Valeo has not shown good cause under Rule 16(b)(4) to amend the scheduling order, it's Motion for Leave to File a Counterclaim is **DENIED**.  [Dkt. 74.]

**SO ORDERED.**

Date: 4/30/2026

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

12